

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00005-CV

LYNN GREGORY, INDIVIDUALLY, AND D/B/A G.C. UNLIMITED, Appellant

V.

AMANDA GRAVES AND JERRY W. GRAVES, JR., Appellees

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-333561-22

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

This case involves the appeal of a default judgment against Lynn Gregory, individually and d/b/a G.C. Unlimited (Gregory), in which Gregory claims that (1) he was never served with process, (2) he is entitled to a new trial under *Craddock*,[1] and (3) he is entitled to a new trial on damages. Although we conclude that the record is sufficient to support the trial court's finding that Gregory was actually served, and though we find that the trial court acted within its discretion in granting the default judgment on liability, we also find that Gregory is entitled to a new trial on damages.

## I.    Background

Amanda and Jerry Graves, Jr., sued Gregory for breach of contract involving the construction of an outdoor renovation of their Fort Worth home.[2] After the trial court entered a default judgment against Gregory, Gregory filed a sworn motion for new trial. Although Gregory requested a hearing on the motion, the motion was ultimately overruled by operation of law.

On appeal, Gregory claims that he was never served with process in the lawsuit in which the default judgment was entered. The morning of May 18, 2022, is the critical time regarding service. The clerk's record contains a return of service by Kevin Blessing, who declared, under penalty of perjury, that, "[o]n **Wednesday May 18, 2022**[,] at **08:30 AM**," citation and

---

[1]*Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939).

[2]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

plaintiff's original petition "were hand delivered" to Gregory at "**6600 E[AST] PEDEN ROAD**, **FORT WORTH, TX**."

In his affidavit accompanying his motion for new trial, Gregory admitted to having a "motor home" at the East Peden Road address shown on the return of service. Gregory claimed, though, that he had moved from the Peden Road address and was not in Fort Worth on May 18. In his affidavit, Gregory stated that he was in Merkle (a town near Abilene) on "the night of May 17 . . . to celebrate [his] brother's birthday" and then went to "Brownwood [on] the morning of May 18" to make "a payment to Brown County."

In his affidavit, Gregory stated that he "had dealt with this matter" in a justice court suit. The affidavit provided a cause number. No docket sheet or order was attached. Gregory also stated that he had received a pre-default telephone call from the Graveses' counsel asking why Gregory had not answered. Gregory's affidavit states that, on that call, he denied being served, he provided updated contact information, and he "was left with the impression" that he would be served using that contact information.

One of Gregory's contentions on appeal is that his motion for new trial was timely, that he requested a hearing, and, therefore, that his motion should not have been overruled without a hearing. Because his motion for new trial was timely, we abated this matter pursuant to Rule 44.4 of the Texas Rules of Appellate Procedure for the trial court to conduct a full evidentiary hearing on Gregory's motion for new trial to determine, among other things, whether Gregory was served with process in the underlying lawsuit. *See* TEX. R. APP. P. 44.4.

3

The trial court conducted a hearing on the motion for new trial, at which Gregory testified that he was not served with process in the underlying lawsuit. Gregory testified that he "was in Abilene" on the morning he was supposedly served. Gregory testified that he was on "probation" at that time. Gregory went on to state that he was from Abilene, but "got in[to] trouble . . . in Brownwood." Gregory testified that he went "to Brownwood to pay out."

At the hearing, Gregory put considerable emphasis on an answer he had filed in another case, a justice court matter in Taylor County brought against Gregory by a different plaintiff. Gregory testified to the answer in the other case as an indication that he was not served in this case, because if he had been served, he would have answered.

At the hearing, considerable attention was also given to a redacted screenshot of what Gregory said was his online bank statement. Initially, Gregory relied on the screenshot to support his testimony that he was in Brownwood on the morning of May 18.

The first question on cross-examination, however, was about a liquor store on Boat Club Road in Fort Worth. Gregory conceded that the liquor store was "less than five miles from Peden Road." Gregory then asked, "Yeah. And the point is?" The Graveses' counsel then asked Gregory why his bank statement showed a purchase at that liquor store on May 17. The statement showed an entry for May 17 that was partially obscured by redactions with a black marker, but nonetheless has legible text stating, "5/17/22 Liquor Run 2 . . . PURCHASE 9595 Boat Club R[d], Fort Worth." Gregory's explanation for this entry was as follows:

> A.      Well, I mean, I went down on the 16th and come back on the 17th. I mean, that would be the same – that would be – I mean, what time of day is it going to be? You know, it's 2 hours and 47 minutes to get from Merkel, Texas to here if you never stop and use the restroom. And I had probation and I went to

4

Brownwood. So does it say what time of day that that purchase might have been made?

> Q. [The Graveses' counsel] It does not say that.

> A. I mean, it's going to have to be after 3 o'clock. You can't buy liquor before noon, so there's no way I could be out there anyway, so it's a moot point. That's a fishing expedition for the same reason why y'all didn't serve me. You know, I don't even live there . . . ."

At this point, the trial court instructed Gregory, "[W]ait until he asks you a question."

Gregory was then asked about another entry on the screenshot that listed a purchase in Nashville on May 18. Gregory testified that he had "never been in Nashville" and that it must have been an online purchase. The Graveses' counsel then asked if Gregory agreed with him "that bank statements aren't an accurate depiction of [Gregory's] location." By asking if Gregory agreed with the Graveses' counsel, it appears that the Graveses' counsel was referring to the Graveses' response to the motion for new trial, which asserted that bank statements cannot be used to pin down the account holder's location at a given time because (1) the entries may reflect online purchases, or (2) they may be processed at a different location than the purchase, or (3) they may be processed days after the purchase. Gregory responded with another lengthy answer that included "there's a million ways we can go about that" and concluded with an assertion that he was not served, because if he had been served, he "would not have ignored it."

When questioned further by the trial court, Gregory testified that he "[did not] know exactly" where he was on May 18, the date listed on the return of service. Gregory testified that the address listed on the return of service—6600 East Peden—is a "boat club marina" and that he was not present there on May 17 or 18. Gregory testified that he was not anywhere near Peden

5

Road on those dates, and what is more, "[he] didn't even go back to [his motor home] that whole summer, [they] were so busy."

Counsel for Graves represented to the court that Gregory was served on May 18, 2022, as shown by the return of service.

From the bench, the trial court made a finding of fact that Gregory had been served, and the court then asked the parties to "move on to the [*Craddock*] factors."

Counsel for Graves advised the court that he "mailed [Gregory] and called him for five months letting him know that a default judgment was going to be taken against him." Counsel for Graves asserted that Gregory's answer in another case was evidence of indifference in this case, i.e., that "[Gregory] knew he had to file an answer in this case because he had done it before."

Before the trial court's finding on service, Gregory had testified that, if he was mistaken about being served and had forgotten about it, he was not indifferent to the lawsuit. Gregory testified that he had a valid defense to the lawsuit's claims[3] and that he was ready to promptly proceed to trial. After the trial court's finding on actual service, Gregory pointed to his answer in the other case as evidence that "[he was] not one to neglect court business." The trial court

---

[3]In support of his motion for new trial, Gregory asserted in his affidavit that the damage to the Graveses' property was the result of heavy rains, instructions by the Graveses to proceed with the work despite Gregory's warnings that the wet ground was too soft to support his heavy machinery, and faulty instructions by the Graveses about the location and operational status of the sprinkler-system components, all of which combined to result in Gregory inadvertently rupturing the main water line. In sum, Gregory stated, "[I]t was not my fault that the line got damaged." Gregory further stated that any issues with the concrete were the result of the "concrete contractor [having] a heat stroke." Gregory further stated that Graveses made unreasonable demands about what was needed to repair the situation and ultimately refused "to let [Gregory] fix the problem."

6

reminded Gregory of the finding that he had, in fact, been served. Gregory argued that "the dismissal of the [justice of the peace] suit" without prejudice could have confused him.[4]

After taking the *Craddock* testimony under advisement, the trial court denied Gregory's motion for new trial by written order on September 29, 2023.

## II.    Appellate Issues

Within his sole issue on appeal, Gregory presents three contentions in his brief: (1) that the evidence negates service entirely; (2) that the evidence establishes the *Craddock* factors; and (3) that his motion for new trial should have been granted as to the sufficiency of the Graveses' evidence of damages.[5] These contentions relate to Gregory's stated issue that the trial court "abused its discretion" in denying him a new trial. We conclude that he was not entitled to a new trial on the issue of liability but is entitled to a new trial on the issue of damages.

## III.    Gregory's First Contention:  Gregory Denies Being Served

We treat Gregory's first contention, by which he denies being served, as raising a matter of personal jurisdiction.

For the most part, Gregory treats his single-issue appeal as being based on the lone *legal theory* of *Craddock* (or perhaps more aptly, lone equitable theory, because *Craddock* is equitable). *Factually*, lack of service is the sole reason Gregory offers on appeal regarding the

---

[4]This assertion does not appear in Gregory's brief. The brief was filed before the hearing on remand but after the answer and dismissal in the other case.

[5]Gregory also claimed the trial court abused its discretion in overruling his motion for new trial by operation of law. This issue was rendered moot by our abatement order, in which we concluded that Gregory's motion for new trial was timely filed. Similarly, Gregory claimed that the response to his motion for new trial did not defeat his entitlement to a new trial. This issue was rendered moot by the new trial hearing.

first *Craddock* factor; Gregory contends that "failure to answer was not the product of intent or conscious indifference, but rather the fact [that] he was not served."

However, Gregory hints at a second legal theory regarding the contested fact of service (or lack thereof). While asserting no actual service regarding the first *Craddock* factor, Gregory also contends that where there is no service, there is no need to address the *Craddock* factors.

On this score, what Gregory hints at is correct; in addition to the equitable considerations of *Craddock*, there is also a body of law regarding service of process. *See, e.g.*, *Matter of Marriage of Sandoval*, 619 S.W.3d 716, 719 (Tex. 2021) (per curiam) ("The husband, who defaulted, filed a motion for new trial, arguing *equitable* grounds under the *Craddock* standard *and legal* grounds regarding improper service or notice of suit." (emphasis added)).

The equitable *Craddock* grounds are more typically raised in instances where there is service but then a post-service excuse for failing to appear. *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006) (per curiam) ("If the answer to this critical question is 'Because I didn't get the suit papers,' the default generally must be set aside. . . . But if the answer to the critical question is 'I got the suit papers but then . . . ,' the default judgment should be set aside only if the defendant proves the three familiar *Craddock* elements."). Gregory could have presented his legal theory of no service as a separate issue. *Matter of Marriage of Sandoval*, 619 S.W.3d at 724 n.1 (declining to reach the question of service because the petition for review was resolved on *Craddock* grounds other than service); *Gen. Elec. Co. v.*

8

*Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991) (holding that, via a motion for new trial, extrinsic evidence may be presented in an effort to set aside a judgment.).[6]

Unlike *Matter of Marriage of Sandoval*, however, we cannot avoid the question of service. This is because Gregory uses his factual denial of service as his sole basis for relief under the first *Craddock* factor. This creates a conundrum for a reviewing court because there are separate standards of review for *Craddock* and for challenges to actual service (with such challenges essentially being an assertion of a lack of personal jurisdiction). Gregory paid scant attention to the non-*Craddock* law regarding service and personal jurisdiction. But he did pay it some attention, plainly stating that, if there is no service, then there is no need to address *Craddock*.

Given the unique posture of this case and the lenient standard for briefing waiver, we opt to consider Gregory as having presented a non-*Craddock* legal argument regarding the contested question of whether there was actual service. *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 780 (Tex. 2021) ("We generously construe our rules to avoid finding briefing waiver in this Court."). In sum, the foregoing discussion explains why we address the standard of review for a personal jurisdiction challenge.

### A.     Standard of Review:  De Novo / Factual Sufficiency

"Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.'" *In re E.R.*, 385 S.W.3d 552, 563

---

[6]Oftentimes, what is contested is whether there was procedural compliance with the rules regarding service. *See U.S. Bank Nat'l Ass'n v. Moss*, 644 S.W.3d 130, 137 (Tex. 2022). Here, though, Gregory denied that he was actually served but does not contest the procedural propriety of the return of service.

9

(Tex. 2012) (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). "[T]rial courts lack jurisdiction over a defendant who was not properly served with process." *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (per curiam). "Whether a court has personal jurisdiction over a party is a question of law that we review de novo, although the court may have to resolve questions of fact." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). "Our courts of appeals may review the fact findings for both legal and factual sufficiency." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam) ("A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence.")). As stated in *Windrum v. Kareh*,

> When conducting a factual sufficiency review, the court of appeals should not substitute its judgment for that of the jury and should "detail the evidence relevant to the issue in consideration and clearly state why the jury's [or trial court's] finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust[,]" shock the conscience, "or clearly demonstrates bias."

*Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019) (second alteration in original) (quoting *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). "[T]he appellate court may not usurp the jury's [or trial court's] role of determining the credibility of witnesses and the weight to be given their testimony, and the court must presume that the fact[-]finder resolved disputed evidence in favor of the finding if a reasonable fact[-]finder could do so." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020).

## B. Substantive Law Regarding Actual Service

"For well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack." *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021) (per curiam) (quoting *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)). On direct attack, "[w]e indulge no presumptions in favor of valid issuance, service, or return of citation." *Spanton*, 612 S.W.3d at 316. "[F]ailure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect." *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam). The party relying on the return of service to support a default judgment bears the burden of showing "that service is properly reflected in the record." *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994) (per curiam). Strict compliance matters because of "the weight given to the recitations in the sheriff's return as proof of service." *Id.* at 152. However, if service is procedurally proper, the tables turn. The return of service is prima facie proof of service. *Id.* The return of service is sufficient to support a default judgment. *Id.* "The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party." *Id.*

## C. Analysis Regarding Actual Service:

We affirm the trial court's finding of actual service.

The return of service includes the proper recitations. It reflects the trial court's cause number and the style of the case, filed on May 23, 2022, in the 352nd Judicial District Court of

11

Tarrant County, Texas. The return states that, on May 16, 2022, at 12:38 p.m., the citation and plaintiff's original petition were received for service. It further reflects that Gregory was personally served with the citation and original petition on Wednesday, May 18, 2022, at 8:30 a.m. at 6600 East Peden Road, Fort Worth, Texas. Blessing included an unsworn declaration "declar[ing] under penalty of perjury that th[e] [return of service] [wa]s true and correct." Blessing also included his PSC number[7] and the expiration date of his certification. *See* TEX. R. CIV. P. 106(a), 107(b), 107(e).

This presents a classic credibility determination by the trial court. When confronted with the liquor store transaction on cross-examination, Gregory gave an answer that would support a conclusion that he was rattled ("I mean . . . . I mean . . . . I mean . . . . I mean . . . ."). When questioned by the trial court about his whereabouts on May 18, Gregory began by stating, "I don't know exactly. I'll have to look at the calendar, Your Honor." The trial court could reasonably disbelieve Gregory's denial of service. We will not disturb the trial court's finding. We cannot say that the trial court's finding of actual service is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrates bias. To the contrary, the trial court's finding is supported by the record.

We affirm the trial court's finding that Gregory was served.[8]

---

[7]Process server certification is conducted by the Judicial Branch Certification Commission. TEX. GOV'T CODE ANN. §§ 152.051, 156.001–.153; TEX. R. CIV. P. 107(b)(10); *see Pirate Oilfield Servs., Inc. v. Cunningham*, 631 S.W.3d 421, 426–27 (Tex. App.—Eastland 2021, no pet.).

[8] Since we affirm the finding that Gregory was served, we need not determine whether the screenshot is sufficient corroboration of non-service under *Primate Constr., Inc.*

12

**IV.    Gregory's Second Contention: *Craddock***

**A.    Substantive Law and Standard of Review**

The Supreme Court of Texas has stated,

*Craddock* provides that a default judgment should be set aside and a new trial ordered in any case in which:

> [1] the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; [2] provided the motion for a new trial sets up a meritorious defense and [3] [the motion] is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) (quoting *Craddock*, 133 S.W.2d at 126).

"A trial court's denial of a motion for new trial is reviewed for abuse of discretion." *Matter of Marriage of Sandoval*, 619 S.W.3d at 721 (citing *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984)). "Under *Craddock*, though, a trial court's discretion is limited, and it must 'set aside a default judgment if . . . [the three *Craddock* factors are satisfied]." *Id.* (quoting *Sutherland v. Spencer*, 376 S.W.3d 752, 754 (Tex. 2012)).

"Under *Craddock*'s first element, 'some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care.'" *Id.* (quoting *Sutherland*, 376 S.W.3d at 755). "The failure to respond must arise from more than mere negligence, and the element of conscious indifference can be overcome by a reasonable explanation." *Id.* "[A]n excuse can be reasonable if it is based on a mistake of law that led to an intentional act." *Id.* An example of such a mistake is "a defendant who does not

13

respond to a suit because he believed the legal matter had already been resolved and did not anticipate that the legal matter would arise again." *Id.* at 723. "This is not to say that every act of a defendant that could be characterized as a mistake of law is a sufficient excuse." *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992).

"Consistent with our preference for courts to adjudicate cases on the merits, we consider the knowledge and acts of the particular defendant to determine whether a failure to answer was not intentional or the result of conscious indifference, but rather due to mistake or accident." *Matter of Marriage of Sandoval*, 619 S.W.3d at 721 (citations omitted); *see Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992) ("[A]n adjudication on the merits is preferred in Texas."). "[T]he fact that an inference of conscious indifference may be drawn does not foreclose the defendant from positing a reasonable excuse for his actions." *Matter of Marriage of Sandoval*, 619 S.W.3d at 723.

## B. *Craddock* Analysis

The trial court did not abuse its discretion. The trial court understood the distinction between the law of actual service and *Craddock*, stating, "Let me just say I find as a finding of fact he was served. So move on to the [*Craddock*] factors."

On appeal, Gregory contends that there is no need to address *Craddock* if there is no service and yet also asserts lack of service as his sole basis for satisfying the first *Craddock* factor.

Denial of in-person service does not always preclude a claim of mistake or accident. For example, in *Ward v. Nava*, the defendant denied in-person service, but acknowledged finding the

14

suit papers in his house, which he concluded must have been left in his mailbox and then brought in with the rest of his mail. *Ward v. Nava*, 488 S.W.2d 736, 737 (Tex. 1972). Ward's search for the suit papers was prompted by a call about the case. *Id.* Ward took prompt action after discovering them. *Id.* The circumstances of *Ward* satisfied the first *Craddock* factor. *Id.*

The present circumstances are different. Gregory's denial of service by any means is inconsistent with an assertion that Gregory had the suit papers but misunderstood their significance.[9] Notably, in Gregory's account of the pre-default call, Gregory did not make any such contention. Gregory asserted that he had not been served. For reasons stated above, the trial court disbelieved Gregory and found that Gregory had been served.

We are not prepared to say that the trial court abused its discretion in determining the ramifications of that finding on the *Craddock* analysis. We affirm the finding that Gregory failed to satisfy the first *Craddock* factor.

## V.    Gregory's Third Contention:  Damages

In his final contention, Gregory asserts that the evidence is insufficient to support the damage award. "[T]he sufficiency of the evidence to support a default judgment can be challenged even though the challenging party is not entitled to have the default set aside under *Craddock*." *Matter of Marriage of Williams*, 646 S.W.3d 542, 545 (Tex. 2022) (per curiam). "When a default judgment is taken against the defendant, all allegations of material fact set forth in the petition are deemed admitted except the amount of unliquidated damages, and the default

---

[9]We note that there is a difference between the cause number of the justice court suit described in Gregory's affidavit and the justice court judgment offered as an exhibit at the hearing. *See Tafel v. State*, 536 S.W.3d 517, 523 (Tex. 2017) (per curiam) ("An appellate court is limited to the record that is before it on appeal and generally may take judicial notice only of (1) facts that could have been properly judicially noticed by the trial judge or (2) facts that are necessary to determine whether the appellate court has jurisdiction of the appeal.")

judgment conclusively establishes the defendant's liability." *Metro A, LLC v. Polley*, No. 02-09-00025-CV, 2011 WL 4413233, at \*5 (Tex. App.—Fort Worth Sept. 22, 2011, pet. denied) (mem. op.) (citing *Holt Atherton Indus., Inc.*, 835 S.W.2d at 86; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984)). "In order to determine unliquidated damages, the trial court must hear evidence regarding damages." *Id.* (citing TEX. R. CIV. P. 243).

Conversely, "[w]hen a plaintiff's claim is liquidated, and proven by an instrument in writing, the plaintiff may be awarded damages without the necessity of a hearing or the presentation of evidence." *Hest Tech., Inc. v. PC Connection Sales Corp.*, No. 02-13-00278-CV, 2014 WL 1327508, at \*3 (Tex. App.—Fort Worth Apr. 3, 2014, no pet.) (mem. op.) (quoting *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 836 (Tex. App.—Dallas 2009, no pet.) (citing *Burrows v. Bowden*, 564 S.W.2d 474, 475 (Tex. App.—Corpus Christi 1978, no writ); TEX. R. CIV. P. 241)).

In this case, the trial court awarded damages of $104,957.05 without hearing evidence regarding damages. This award included "the amount paid under the contract prior to [Gregory's] breach, and the amount to repair the property damaged by [Gregory]." The trial court explained:

> The total contract amount was for $44,995.00. At the time of [Gregory's] breach, [the Graveses] paid $29,500.00, one installment on April 19, 2021, for $15,000.00, and a second installment on May 7, 2021, for $14,500.00. The total cost to repair the damage done by [Gregory] and finish the work agreed upon under the contract was $75,457.05.

The trial court gave the following account of the $75,457.05:

- Emerald Landcare: $2,500.00 "to fix the sprinkler system";

16

- Juan's Tractor Service: $35,847.00 "to fix the damage caused by [Gregory,]including demolishing the old slap [sic] [Gregory] poured and other stone/brick work" (no proof of payment);

- JP Hart Lumber: $18,652.61 "for all the wood and Microlam Beams";

- "Plaintiffs paid $930.76 for the stain work, gutter repair, and plumbing";

- Jovany Morales: $5,700.00 "for the construction of the pergola";

- A&C Plastics, Inc.: $3,525.38 "for the polycarbonate panels and installation";

- Jim England Plumbing: $2,235.00 "for sewer and drain work";

- JG Natural Stone: $4,416.30 "for granite work"; and

- David Ayers: $1,650.00 "for electrical work."

To prove entitlement to these damages,[10] Jerry Graves, Jr., attached his sworn affidavit to the default motion, listing the above amounts, the payee, and the nature of the work, as reflected in the trial court's judgment. Amanda Graves's affidavit, also attached to the motion, included invoices for some of the referenced amounts.[11]

On appeal, Gregory argues that, because damages are unliquidated, the evidence is insufficient to support the damage award. On this, we agree with Gregory. The question we must resolve is whether the Graveses' damages were liquidated and proved by an instrument in

---

[10]The trial court also awarded "$2,730.00 [in] attorney's fees through judgment" and $15,000.00 in attorney fees in the event of an appeal, "$12,500.00 if a petition for review is [filed in] the Texas Supreme Court," and "$15,000.00 if the petition for review is granted." Gregory did not raise a point of error regarding the issue of whether the award of attorney fees required the trial court to hear evidence of those fees.

[11]Invoices were attached to the affidavit for each of the listed items except for the following: David Ayers's electrical work (although a check to Ayers was attached to the affidavit); Jovany Morales's pergola construction (although a check to Morales was attached to the affidavit); stain, gutter and plumbing work (although various receipts from Home Depot were attached). Although invoices were attached for the following items, no receipts or checks indicating payment to Juan's Tractor Service, JP Hart Lumber, A&C Plastics, Inc., Jim England Plumbing, and JG Natural Stone were attached to the affidavit.

17

writing. *See* TEX. R. CIV. P. 241. "A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual as opposed to the conclusory allegations in the plaintiff's petition and the instrument[12] in writing." *Abcon Paving, Inc. v. Crissup*, 820 S.W.2d 951, 953 (Tex. App.—Fort Worth 1991, no pet.). Here, the only allegations regarding damages in the Graveses' first amended petition include a statement that they paid Gregory $29,500.00 of the agreed sum and that they sought damages "greater than $250,000.00 but no more than $1,000,000.00." No written instrument or contract was attached to the petition or the motion for default judgment. Although copies of various invoices, receipts, and checks were attached to the motion for default judgment, those do not qualify as written instruments within the meaning of Rule 241 of the Texas Rules of Civil Procedure. *See id.* at 953; *Alvarado v. Reif*, 783 S.W.2d 303, 305 (Tex. App.—Eastland 1989, no pet.) (affidavit of repair cost does not render repair estimate a liquidated damage). We, therefore, conclude that the Graveses' damages were unliquidated. Consequently, the trial court was required to hear evidence of those damages. *See* TEX. R. CIV. P. 243.

---

[12]An instrument is "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Instrument*, BLACK'S LAW DICTIONARY (11th ed. 2019).

**IV.    Conclusion**

We affirm the trial court's judgment on the issue of Gregory's liability.  We reverse the damage portion of the judgment and remand to the trial court for a new trial on the issue of damages.



Jeff Rambin
Justice


Date Submitted:     October 4, 2023
Date Decided:      December 6, 2023